
FILED
VANESSA L. ARMSTRONG, CLERK
JUL - 1 2019
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                                                    CRIMINAL NO. 3:19-CR-95-JHM

**JOSEPHINE M. CROWE**                                           DEFENDANT

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by Russell M. Coleman, United States Attorney for the Western District of Kentucky, and defendant, JOSEPHINE M. CROWE, and her attorney, Thomas E. Clay, have agreed upon the following:

1. Defendant agrees to waive Indictment by the grand jury and to plead guilty to a felony Information which will be filed against defendant by the United States Attorney for the Western District of Kentucky. That information will charge defendant with violations of Title 18, United States Code, Section 1344 (financial institution fraud) and Title 18, United States Code, Section 1028A(a)(1) (aggravated identity theft). Defendant further acknowledges that the Information in this case seeks forfeiture of any property, real or personal, which constitutes or is derived from proceeds obtained, directly or indirectly, as the result of the violations, and any property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and Title 28, United States Code, Section 2461, by reason of the offenses charged in Counts 1 and 2 of the Information.

2. Defendant has read the charges against her contained in the Information, and those charges have been fully explained to her by her attorney. Defendant fully understands the nature and elements of the crimes with which she has been charged.

3. Defendant will enter a voluntary plea of guilty to Counts 1 and 2 of the Information in this case. Defendant will plead guilty because she is in fact guilty of the charges. The parties agree to the following factual basis for this plea:

Beginning no later than January 2013, and continuing through on or about November 22, 2017, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendant knowingly executed and attempted to execute a scheme and artifice to defraud the Louisville Metro Police Officer's Credit Union (the "Credit Union"), the deposits of which were then and there insured by the National Credit Union Share Insurance Fund, and to obtain monies, funds, credits, and assets owned by and under the custody and control of the Credit Union by means of false and fraudulent pretenses, representations and promises. At all times between 2013 and November 22, 2017, the Credit Union was a state-chartered credit union, federally insured by the National Credit Union Association ("NCUA"), with multiple locations in Louisville, Kentucky.

More specifically, during the relevant time period, the defendant, who was then Vice President of the Credit Union, devised and executed a scheme to steal cash from the Credit Union's vault and teller drawers, to transfer Credit Union funds into accounts belonging to herself and certain of her family members, and to make payments on certain unwitting Credit Union members' loans with Credit Union funds that did not belong to the members for whose benefit they were credited.

During the course of the scheme, the defendant engaged in various deceptive methods in order to compensate for the depletion of cash that she stole from the Credit Union. To replace the missing cash, and in order to continue the day-to-day operations of the Credit Union, the defendant (a) instructed Credit Union employees, members, and others to withdraw cash from an ATM using a either a debit card she provided or the individual's personal debit card and return the cash to her for Credit Union operating needs; (b) obtained credit card cash advances from members' credit cards; (c) wire transferred funds to external accounts at various other financial institutions and then obtained cash from the transfer; and (d) recorded fictitious, unauthorized loans and using the proceeds of these loans to issue an Official Check, which she then directed individuals to cash at local pawn shops or financial institutions and to return the cash proceeds to her so that she could then place it in the Credit Union's vault and teller drawers. The defendant also created hundreds of fictitious, unauthorized loans by generating fraudulent loan documents and agreements between the Credit Union and unwitting Credit Union members in order to cover up her theft of cash from the Credit Union's vault and teller drawers. By way of all these means, in the course of the scheme, the defendant misappropriated and caused the loss of over $3 million from the Credit Union by taking cash and by diverting Credit Union funds into bank accounts

belonging to herself and various other individuals, including family, friends, and certain unwitting members of the Credit Union.

During the course of the scheme, on or about September 15, 2016, the defendant created a fictitious, unauthorized loan for $100,000 in the name of a member of the Credit Union ("Member 1") without the knowledge and approval of Member 1, collateralizing the loan with a certificate of deposit owned by Member 1. The defendant then deposited the loan proceeds, which were funds owned by and under the custody and control of the Credit Union and then and there insured by the National Credit Union Share Insurance Fund, into an account held by Member 1 at the Credit Union and approximately fifteen days later the defendant withdrew the entirety of the $100,000 loan proceeds from the account in the form of cash.

During the course of the scheme to defraud the Credit Union, the defendant also knowingly used, without any lawful authority, the means of identification of numerous members of the Credit Union in order to create the fictitious loans that she devised in order to cover up the scheme and generate cash for the operations of the Credit Union. In one specific instance, on or about September 15, 2016, the defendant knowingly used, without lawful authority, the means of identification of another person, specifically the name, social security number, and date of birth of Member 1 of the Credit Union, during and in relation to the commission of bank fraud, in violation of Title 18, United States Code, Section 1344 (a felony violation enumerated in Title 18, United States Code, Section 1028A(c)). The defendant used these means of identification of Member 1 in order to generate the fraudulent loan documents and agreement for the $100,000 loan she created without Member 1's authorization and subsequently withdrew the proceeds of in the form of cash.

The defendant also took numerous steps to conceal her scheme to defraud from detection by the Credit Union and others. During the course of the scheme the defendant engaged in elaborate check kiting in order to conceal her thefts from the Credit Union wherein she issued unauthorized Official Checks from certain members' accounts at the Credit Union and deposited those Official Checks into other members' accounts, all without the members' knowledge, and continued issuing new checks to cover insufficient funds notices on the original checks when she overdrew the members' accounts. As the funds that were purportedly on deposit for these Official Checks were largely non-existent, over $675,000 of checks were returned for insufficient funds when the defendant's scheme was uncovered and her kiting of checks brought to a halt. In addition to check kiting, the defendant also manipulated the books and records of the Credit Union to conceal her thefts from the Credit Union and make it appear that the fraudulent loan agreements, related documents and subsequently generated loans were legitimate contracts and loans. Among other things, the defendant deleted information from and added false information to files, manipulated the Credit Union's general ledger in various ways such as by performing fictitious cash withdrawals to lower the general ledger cash balance, and manipulated members' accounts and account statements to conceal unauthorized changes she had made to the accounts.

When the defendant's scheme was discovered by the Credit Union and brought to an end in November 2017, the defendant took further steps to attempt to conceal her fraudulent activity even after she had been suspended and removed from her position, including remotely accessing the Credit Union's data processing system and making changes to the general ledger and deleting

significant files and information from her computer at the Credit Union. In December 2017, the Credit Union was placed into conservatorship by the NCUA and considerable efforts were undertaken to untangle the defendant's scheme to defraud and correct the operational weaknesses the defendant had created at the Credit Union. Ultimately, as a result of the scheme perpetrated by the defendant, the Credit Union suffered catastrophic losses, was rendered insolvent with no prospect for restoring viable operations, and was liquidated by the NCUA.

4. Defendant understands that the charges to which she will plead carry a minimum term of imprisonment of 24 months, a combined maximum term of imprisonment of 32 years, a combined maximum fine of $1,250,000, and a 3 year term of supervised release. Defendant understands that an additional term of imprisonment may be ordered if the terms of the supervised release are violated, as explained in 18 U.S.C. § 3583. Defendant understands that as a result of the charges to which she will plead guilty she may be ordered to forfeit any property, real or personal, which constitutes or is derived from proceeds obtained, directly or indirectly, as the result of the violations, and any property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and Title 28, United States Code, Section 2461, by reason of the offenses charged in Counts 1 and 2 of the Information.

5. Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, which may include the offense to which Defendant is pleading guilty. In addition, if she is a naturalized citizen, Defendant acknowledges that certain convictions, which may include Defendant's conviction, may expose her to denaturalization under federal law. Because removal, denaturalization, and other immigration consequences are handled in separate proceedings, Defendant understands that no one, including her attorney or the U.S. District Court, can predict with certainty how her conviction may affect her immigration, naturalization, or citizenship status. Defendant agrees to plead guilty with a full understanding

that this guilty plea may lead to adverse immigration consequences, including denaturalization and possible automatic removal from the United States.

6. Defendant understands that if a term of imprisonment of more than one year is imposed, the Sentencing Guidelines require a term of supervised release and that she will then be subject to certain conditions of release. §§5D1.1, 5D1.2, 5D1.3.

7. Defendant understands that by pleading guilty, she surrenders certain rights set forth below. Defendant's attorney has explained those rights to her and the consequences of her waiver of those rights, including the following:

    A. If defendant persists in a plea of not guilty to the charges against her, she has the right to a public and speedy trial. The trial could either be a jury trial or a trial by the judge sitting without a jury. If there is a jury trial, the jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent and that it could not convict her unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

    B. At a trial, whether by a jury or a judge, the United States would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court.

C. At a trial, defendant would have a privilege against self-incrimination and she could decline to testify, without any inference of guilt being drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

8. Defendant understands that the United States Attorney's Office has an obligation to fully apprise the District Court and the United States Probation Office of all facts pertinent to the sentencing process, and to respond to all legal or factual inquiries that might arise either before, during, or after sentencing. Defendant admits all acts and essential elements of the indictment counts to which she pleads guilty.

9. Defendant agrees that the amount of restitution ordered by the Court shall include Defendant's total offense conduct, and is not limited to the counts of conviction. The parties agree and stipulate that Defendant shall pay restitution in the amount of $3,049,025. The parties agree that the restitution shall be ordered due and payable on the date of sentencing. Defendant agrees that any payment schedule imposed by the Court is without prejudice to the United States to take all actions available to it to collect the full amount of the restitution at any time. Restitution payments shall be made payable to the U.S. District Court Clerk at Gene Snyder Courthouse, 601 W. Broadway, Louisville, KY 40202. The restitution shall be paid to or on behalf of the following victim:

| Victim | Amount |
|---|---|
| National Credit Union Administration, as liquidating agent for the Louisville Metro Police Officers Credit Union | $3,049,025 |

Defendant agrees that not later than 45 days from entry of the Plea Agreement, Defendant shall provide to the United States, under penalty of perjury, a financial disclosure form listing all Defendant's assets/financial interests. Defendant authorizes the United States to run credit bureau

reports prior to sentencing, and Defendant will sign releases authorizing the United States to obtain Defendant's financial records. Defendant understands that these assets and financial interests include all assets and financial interests in which Defendant has an interest, direct or indirect, whether held in Defendant's own name or in the name of another, in any property, real or personal. Defendant shall also identify all assets valued at more than $5,000 which have been transferred to third parties since the date of the first offense, including the location of the assets and the identity of the third party(ies). Defendant agrees that the United States may share the contents of the reports and financial disclosures with the Court and U.S. Probation.

Defendant agrees to submit to a deposition in aid of collection at times and places that the United States directs. If the Defendant has a financial advisor or accountant, Defendant agrees, at her expense, to make them available to aid the United States in determining Defendant's net worth. Defendant authorizes the United States to file notice of Lis Pendens prior to judgment on any real property Defendant owns either individually or jointly. Defendant agrees to her name and debt being added to the Treasury Offset Program.

Upon execution of the Plea Agreement, Defendant agrees not to transfer, sell, or secrete any of Defendant's property, real or personal, held jointly, individually or by nominee/third party, valued at $5,000 or more without first advising the United States not less than 10 days before the proposed sale or transfer. Defendant agrees that failure to comply with any of the provisions of this Agreement constitutes a material breach of the Plea Agreement and Defendant agrees that the United States is relieved of its obligations under this Agreement and/or may not move the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may in its discretion argue to the Court that the Defendant should not receive a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) However, the Defendant may not

withdraw her guilty plea because of her breach. The defendant further understands that she may be responsible for a fine, costs of prosecution, costs of incarceration and supervision which may be required.

10. Defendant acknowledges liability for the special assessment mandated by 18 U.S.C. § 3013 and will pay the assessment in the amount of $200 to the United States District Court Clerk's Office by the date of sentencing.

11. At the time of sentencing, the United States will

-recommend a sentence of imprisonment at the lowest end of the applicable Guideline Range, but not less than any mandatory minimum term of imprisonment required by law.

-recommend a fine at the lowest end of the applicable Guideline Range, to be due and payable on the date of sentencing.[1]

-recommend a reduction of 3 levels below the otherwise applicable Guideline for "acceptance of responsibility" as provided by §3E1.1(a) and (b), provided the defendant does not engage in future conduct which violates any federal or state law, violates a condition of bond, constitutes obstruction of justice, or otherwise demonstrates a lack of acceptance of responsibility. Should such conduct occur and the United States, therefore, opposes the reduction for acceptance, this plea agreement remains binding and the defendant will not be allowed to withdraw her plea.

-stipulate that the amount of loss in this case attributable to the defendant did not exceed $3.5 million but was greater than $1.5 million.

12. Both parties have independently reviewed the Sentencing Guidelines applicable in this case, and in their best judgment and belief, conclude as follows:

---

[1] The defendant acknowledges that she has read the Notice and Penalty Pages attached to the Information, and that she understands the interest and penalty provisions applicable to the fine imposed and included in the Judgment entered by the Court, said Notice and Penalty Pages are incorporated herein by reference.

A. The Applicable Offense Level should be determined as follows:

**Count 1: Financial Institution Fraud**

| | | |
|---|---|---|
| USSG § 2B1.1(a)(1) | 7 | (Base offense level) |
| USSG § 2B1.1(b)(1)(I) | 16 | (Loss greater than $1.5 million but less than $3.5 million) |
| USSG § 2B1.1(b)(2)(A)(i) | 2 | (10 or more victims) |
| USSG § 2B1.1(b)(10)(C) | 2 | (Sophisticated means) |
| USSG § 2B1.1(b)(16)(B)(i) | 4 | (Substantially jeopardized safety of financial institution) |
| USSG § 3B1.3 | 2 | (Abuse of position of trust) |
| USSG § 3E1.1 | -3 | (Acceptance of responsibility) |
| Offense Level | 30 | |

**Count 2: Aggravated Identity Theft**

USSG § 2B1.6         Plus 24 months' imprisonment consecutive

B. The Criminal History of defendant shall be determined upon completion of the presentence investigation, pursuant to Fed. R. Crim. P. 32(c). Both parties reserve the right to object to the USSG §4A1.1 calculation of defendant's criminal history. The parties agree to not seek a departure from the Criminal History Category pursuant to §4A1.3.

C. The foregoing statements of applicability of sections of the Sentencing Guidelines and the statement of facts are not binding upon the Court. The defendant understands the Court will independently calculate the Guidelines at sentencing and defendant may not withdraw the plea of guilty solely because the Court does not agree with either the statement of facts or Sentencing Guideline application.

13. Defendant is aware of her right to appeal her conviction and that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Unless based on claims of ineffective assistance of counsel or prosecutorial misconduct, the Defendant knowingly and voluntarily waives the right (a) to directly appeal her conviction and the resulting sentence pursuant to Fed.

R. App. P. 4(b) and 18 U.S.C. § 3742, and (b) to contest or collaterally attack her conviction and the resulting sentence under 28 U.S.C. § 2255 or otherwise. Defendant specifically waives on appeal or in a collateral attack any argument that (1) the statutes to which the defendant is pleading guilty is are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.

14. Defendant agrees to waive any double jeopardy challenges that defendant may have to any administrative or civil forfeiture actions arising out of the course of conduct that provide the factual basis for this Indictment. Defendant further agrees to waive any double jeopardy challenges that defendant may have to the charges in this Information based upon any pending or completed administrative or civil forfeiture actions.

15. Defendant waives and agrees to waive any rights under the Speedy Trial Act and understands and agrees that sentencing may be delayed. The reason for such waiver is so that at sentencing the Court will have the benefit of all relevant information.

16. Defendant agrees not to pursue or initiate any civil claims or suits against the United States of America, its agencies or employees, whether or not presently known to defendant, arising out of the investigation or prosecution of the offenses covered by this Agreement.

17. The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. Defendant agrees to interpose no objection to the United States transferring evidence or providing information concerning defendant and this offense, to other state and federal

agencies or other organizations, including, but not limited to the Internal Revenue Service, other law enforcement agencies, and any licensing and regulatory bodies, or to the entry of an order under Fed. R. Crim. P. 6(e) authorizing transfer to the Examination Division of the Internal Revenue Service of defendant's documents, or documents of third persons, in possession of the Grand Jury, the United States Attorney, or the Criminal Investigation Division of the Internal Revenue Service. Defendant further agrees to the entry of an order under Fed. R. Crim. P. 6(e) authorizing the use of documents in possession of the Grand Jury to be used during the defendant's deposition as contemplated in paragraph 9 of this Agreement.

19. Defendant agrees to forfeit and abandon any right to any and all evidence and property seized during the course of this investigation (including but not limited to any item subject to forfeiture), and waives any right to seek the return of any property pursuant to Fed. R. Crim. P. 41 or otherwise. Defendant understands and agrees that items seized during the course of this investigation will be destroyed or otherwise disposed of by the seizing law enforcement agency.

20. It is understood that pursuant to Fed. R. Crim. P. 11(c)(1)(B), the recommendations of the United States are not binding on the Court. In other words, the Court is not bound by the sentencing recommendation and defendant will have no right to withdraw her guilty plea if the Court decides not to accept the sentencing recommendation set forth in this Agreement.

21. Defendant agrees that the disposition provided for within this Agreement is fair, taking into account all aggravating and mitigating factors. Defendant states that she has informed the United States Attorney's Office and the Probation Officer, either directly or through her attorney, of all mitigating factors.

22. This document and the supplemental plea agreement state the complete and only Plea Agreements between the United States Attorney for the Western District of Kentucky and defendant in this case, and are binding only on the parties to this Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing that are signed by all parties or on the record in Court. No other promises or inducements have been or will be made to defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

AGREED:

RUSSELL M. COLEMAN
United States Attorney

By:

_Stephanie M. Zimdahl_  7/1/19
STEPHANIE M. ZIMDAHL                              Date
Assistant United States Attorney


I have read this Agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it.

_Josephine M. Crowe_   7/1/19
JOSEPHINE M. CROWE                                Date
Defendant


I am the defendant's counsel. I have carefully reviewed every part of this Agreement with the defendant. To my knowledge my client's decision to enter into this Agreement is an informed and voluntary one.

_Thomas E. Clay_    7/1/19
THOMAS E. CLAY                                    Date
Counsel for Defendant

RMC:SMZ

# FINANCIAL STATEMENT

United States Attorney's Office
Western District of Kentucky



### A. GENERAL INSTRUCTIONS - READ CAREFULLY

The purpose of this form is to give a complete and accurate picture of your financial condition so we may decide how to collect financial claims against you. If you are married, list assets held by your spouse, as well as yourself, and show whether each asset is owned individually or jointly. Before completing and submitting this form, you may discuss it with your own attorney. By completing and signing this financial statement, you acknowledge that the information provided will affect action by the United States Department of Justice and further understand that any false answers can lead to the termination or nullification of any potential settlement agreement reached and/or prosecution for false statements under Title 18, United States Code, Section 1001 (maximum prison sentence of five (5) years and/or a fine of not more than $250,000).

Each question must be answered completely. If the answer is "none", you must state "none." DO NOT leave any question unanswered.

Please date and initial each page, and sign the last page and accompanying Release. If there is insufficient space on the form, please attach additional sheets as necessary, and date and initial each additional page.

### B. ACKNOWLEDGMENT, IF REPRESENTED BY COUNSEL

If I am represented by retained or appointed counsel, I acknowledge having reviewed the foregoing instructions with my counsel. My counsel's name and telephone number:_____

_____

Name of Person Completing Form:

_____
First                               Middle                                    Last

My Signature: _____ Date:_____

Authority for the solicitation of the requested information includes one or more of the following: 5 U.S.C. §§ 301, 901 (see Note, Executive Order 6166, June 10, 1933); 28 U.S.C. § 501-530A; 28 U.S.C. §§ 1651, 3201-3206; 31 U.S.C. § 3701-3731; 44 U.S.C. § 3101; 28 C.F.R. §§ 0.160, 0.171 and Appendix to Subpart Y; 18 U.S.C. § 3664(d)(3); and Fed.R.Civ.33(a).

The principal purpose for gathering this information is to evaluate your ability to pay the government's claim or judgment against you. Routine uses of the information are established in the following U.S. Department of Justice Case File Systems published in Vol. 42 of the Federal Register, Justice/CIV-001 at page 53321; Justice/TAX-001 at page 15347; Justice/USA-005 at pages 53406-53407; Justice/USA-007 at pages 53408-53410; Justice/CRIM-016 at page 12774. Disclosure of the information is voluntary. If the requested information is not furnished, the United States may seek disclosure through other means.

Revised 1/19/17

Page 1