UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

United States of America,
  Plaintiff

v.  Criminal Action No. 3:19-cr-95-DJH
  Judge Hale

Josephine Crowe,
  Defendant

FILED
JAMES J. VILT JR,
CLERK
September 29, 2022
U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

Dear Judge Hale,

As of today September 21, 2022 and I have not received the governments response to my compassionate release motion. I only received a copy of my sealed medical records on September 14, 2022. I called the Court on September 20, 2022 after giving it a few days to come and the clerk informed me my response would still be due regardless of whether I received it or not. Fortunately she resent it and I received it on Friday, September 23, 2022 and only had the weekend to respond.

After reviewing the Prosecutors response I would like to share the following.

I spent months preparing my compassionate release with limited computer access from lockdowns in December 2021, January 2022, March 2022 and June 2022 due to COVID-19 outbreaks. I researched to the best of my ability with my limited resources to provide you with the most thorough understanding of what actually happens in my facility in regards to my healthcare treatment. Not what it says on paper but what actually goes on each day. I did not want to provide a cookie cutter motion. I was diligent to paint a picture for you so you would be able to make an informed decision.

From the Prosecutor I received a cookie cutter response using the exact verbiage of many other responses that have floated around our facility. I am an individual sir, not a mold. I, as an individual continue facing issues related to my Atrial Fibrillation (Afib). My body is like no other individuals and does not fit in a cookie cutter response in regards to my medical conditions.

On the first page the Prosecutor says I filed my motion because of "her fear that she will contract the virus and suffer complications". Judge Hale, it is not just a "fear" it is a reality. The reality of contracting COVID-19 for a 3rd time and suffering "additional" complications as you can imagine is worrisome in this environment. I realize living in fear is no reason to grant a compassionate release but putting someone at high risk at a high risk of dying should. As noted in my motion as well as my medical record each time I contracted the virus my Afib worsened thus resulting in having to have a Heart Ablation. After the last contraction of the virus I got shingles and have continued to have issues with them. Apparently my immune system cannot fight the virus well enough to protect me from further complications.

On page 2 and 3 the background was discussed and I just wanted to mention that no where in my motion did I deny or minimize my crime. I voiced my acceptance of responsibility. Every single day I think of those affected from my criminal behavior. I have not blamed anyone else. I have not attempted to mollify my activities. I know and understand the results it has had on my community, individual members and my family. From all of those I pray for and seek forgiveness. I have been humbled by this experience. It ha certainly been a time of reflection. It has helped me to re-evaluate what is

important in life, in my life and my families life. I cannot re-do what I have done but I can work hard for my community. I genuinely love my community. I dream of what I can do to help my low income impoverished neighborhood. My husband, children, parents and grandchildren are a part of that community. I want to do my part in making it a great place to live and raise a family. I by no means believe my behavior had no impact. I do not in any form deny my wrongdoings.

On page 3 it states I have completed 32 months of my 132 month sentence as of my motion date. According to my computation data the BOP calculates my percentage of time served from my statutory time. As of my motion I had completed 32 months of my statutory sentence of 112.2 months. Once I am given credit for my apprenticeship and my programming in October 2022 of 12 months my new statutory time will be 100.2 months, therefore in October 2022 serving 33 months of 100.2 months. Which then puts me at 33% of my statutory time. See BOP Memo (Attachment 1) where 365 days (1 year) will be taken from my statutory time.

On page 4 the Prosecutor pointed out that I am a Care Level 1, while my medical record reflects that, I have not had my annual visit yet to have my medical record updated which is when my provider told me it gets updated. At looking at the definition of a Care Level 1 according to the BOP, I am definitely a Care Level 2 patient (see Exhibit 24 from my motion). A Care level 1 says you have mild asthma and well-controlled Hyperlipidemia or Hypertension. I take multiple medications for asthma therefore reflecting my asthma not being mild but moderate to severe. My medical records (Exhibit 26) from my motion shows my Hyperlipidemia never being under control while in the BOP.

| Date | Cholesterol | LDL |
|---|---|---|
| 04-04-2020 | Cholesterol was 204 (page 15) | LDL 130, should not be over 100. |
| 12-02-2020 | Cholesterol was 202 (page 9) | LDL 132 |
| 06-24-2021 | Cholesterol was 207 (page 4) | LDL 131 |
| 11-24-2021 | Cholesterol was 215 (page 1) | LDL 145 |

There has been no lab work performed in 2022. Therefore 10 months and no monitoring whatsoever. As you can see a pattern of even after losing over 40 lbs my total cholesterol has continued to climb as well as my LDL. The second reason I am beyond the scope of a Care Level 1 according to the BOP Care Level policy. Third, if they have my Hypertension under control, why do they have me on three medications trying to control it and one of them keeps changing in dosage? In reviewing Exhibit 24 once again you will see that Care Level 2 says the patient is stable and require clinician evaluations at least every six months. Their medical care can be managed through routine, regularly scheduled appointments. It states that the patient would have enhanced medical resources, such as consultation or evaluation by medical specialists from time to time. It is obvious from my 6 visits to outside specialist in the last 8 months that I fall into the category as having to be seen my outside specialists regularly, (See Attachment 2). But according to the Prosecutor I am stable, well managed and my health conditions are controlled through treatment by BOP Health Services at the present time (page 5 and page 8). It also

states I have received significant attention to my medical needs from both BOP doctors and medical personnel and outside caregivers at UK, the latter is true however, my medical records reflect the former not to be. The medical records speak for themselves. It should not be held against me because the in-house provider has not taken the time to change my Care Level to a 2. Your care level is not changed after every sickness. As mentioned in my motion, I was told it is changed at your annual checkup. I have not seen in a compassionate release requirement that you have to be a certain BOP Care Level.

Continuing on page 4 of the Prosecutors response. The Pulmonary Vein Isolation Ablation procedure itself was successful, however it does not prove my Afib has been corrected. No where in my medical record does it say my Afib is cured. According to the EP Specialist that is yet to be determined. The two procedures that followed my surgery the Prosecutors referred to in July 2022 were a result from complications after surgery that I shared at my follow-up visit on June 08, 2022 at UK to the EP Specialist and she ordered additional testing. She stated it was "unfortunate that she didn't receive her Carafate and PPI at discharge." Once the EP Specialist submitted this report to the BOP, the BOP decided a month and week after surgery to prescribe my post surgery medications. Exhibit 23 in my motion shows me telling the EP Specialist at UK that I had already had 1 episode of Afib since surgery and acknowledged to her that I had not received the medication she prescribed. I reported to her my previous issue of vision loss and terrible headaches that the BOP ignored and she is the one to order the follow up testing. Please review the medical record attachments to my motion. You can follow the trail of no follow up from the BOP after my surgery. My records show since May 3, 2022 (surgery date) I have been seen by the BOP nurse on May 8th (Sunday) where the officer in charge requested the assistance of a nurse from the Men's facility because I was so ill. The second and third encounter since my surgery were for Dental issues. However, once the Prosecutor ordered my records from the BOP, I was suddenly sent for at my job to come in for a medical follow up on September 6th, 2022. That was the very first time that a BOP provider ask me about my Afib. My medical records prove this true. See Attachment 3, not on the schedule. As mentioned in my motion I went to seek medical help the first week and was denied. So my medical records are proof that there is no plan for follow up as the BOP providers have told the Prosecutors as they mention on page 4, however, I did discuss a plan with the EP Specialist. I am at her mercy for follow up as you can see in my medical records there is zero follow up. Please don't confuse the BOP Health Services requests an internal consultation as it is not. It is completed by an outside provider, not the BOP. When I asked the EP Specialist about getting COVID again she stated it has not been long enough to know the data. Basically, we don't know, have to wait and see. I was never ask by medical how my Afib was doing until the Prosecutor requested my records from the BOP and the medical office called me in from work to ask me how I was doing. That was September 6th, 2022. Prior to that there is no documentation that reflects I was ever checked on by the BOP.

On page 5, the Prosecutor infamous BOP Action Plan. In my motion I provided this Court with detailed information

that the Bureau of Prisons (BOP) may have an "Action Plan" on a bookshelf somewhere, it is not anything the staff has been informed of and is not a part of daily life at the camp. The so called Action Plan put a few pink circles on our wall in the halls showing 4 to 6 feet apart for standing. That is really the only change that was seen. Suddenly COVID pops up and we are provided with fewer safety measures than we had pre-COVID, including no access to hand soap. Officers have said they don't even know how to look it up and find it. To quote an officer "It is just politics". Judge Hale, politics should not play a part in a decision that affects my health outcomes. There are dozens of articles and groups who are putting pressure on Congress and others to do something about the inadequate care being provided by the BOP. They are fighting for change but change doesn't come quickly in the BOP and could cost me my life. It is no secret that the BOP is in a shambles and continuing to rise in number of inmates regardless of Congress putting the CARES Act in place and asking them to send inmates home to home confinement. Dr. Merchant told me I was a high risk inmate that would meet guidelines to be released on the Cares Act but unfortunately I would have to be at 50% of my sentence to be eligible to be approved and released. We are now at 232 inmates where it was 176 in December of 2020. The BOP would not be under scrutiny if they followed all of the policies that the Prosecutors insinuates they do. They would not have replaced the BOP Director if the BOP was following their policies. I realize I don't have to spell those things out to you but I have to fight for myself. I don't expect anyone else to do that for me. I am putting myself out there to you and expressing my concerns that affect my life and the lives of my families future. I realize your job isn't easy and you don't take your responsibilities likely and that is why I made such an effort to make sure you were informed. Bureaucracy has not place in my right to proper health care and proper protection from any virus.

On page 6, the Prosecutors mentions that on September 6, 2022 there was only one COVID positive inmate at the Men's facility next door. They did not mention that there were eight (8) staff cases and four (4) of those at the Atwood Camp where I am housed as posted on the BOP website. The Prosecutor says the Court must consider that I refused preventative care screenings in 2020. I had already had a mammogram and a pap smear before entering the facility in January 2020. It was not time for my annual visit for either. Not to mention because we were locked down almost all of 2020, inmates were not being taken out for screenings.

On page 7, the Prosecutor uses the Jones, 980 F.3d 109, 1112 (6th Cir. 2020) and Gunn 980 F.3d 1178 (7th Cir. 2020) cases that have become ever so popular in the cookie cutter responses from Prosecutors using the word "whim" and "The Wild West". I choose not to insult the Court to think for a moment it would act on a "whim" or "The Wild West" in its decision making. I did not produce a motion to the Court on a whim nor do I think the Court would ever respond on a whim. It is an insult to the Court. I cannot control the release policies of Judges or Court systems. I can only provide the facts of

my own case as I know it and hope the Court reviews it in its entirety and thoroughly and appreciates the effort taken to inform the Court so they can have the opportunity to make and informed decision based on facts.

The Prosecutor goes on to use Sapp 2020 WL 515935, "They must also be "compelling" meaning "so great that irreparable harm or injustice would result if the relief is not granted." I like that the Prosecutors used this case because it is a great example that explores the facts of my medical conditions and the lack of BOP medical care and helps convey to the Court just how irreparable harm could come to me if the BOP continues on its present track of COVID protocol and this Camp has another outbreak. What conditions will worsen for me the 3rd time. None of us have a crystal ball bit if the past repeats itself within these walls it could be deadly for me. If the Court decides to take that gamble I want to know I have done my best to provide what limited information I have to the Court. There are women at this facility presently sick and four staff members have had COVID but these inmates will not go an get tested because no one wants to be isolated by themselves for 14 days after experiencing the brutal conditions at this location. They know they will receive no medical attention anyway and they don't care if they make those of us that are vulnerable sick, they simply do not care. According to CDC protocol as mentioned in my motion, no mass testing is done in this facility when a positive has been identified.

On page 8, the Prosecutors says I contracted the virus twice and tolerated it without exhibiting any severe symptoms and recovered to my previous health. How can the Prosecutor say this when it is documented both times after being COVID positive my Afib has escalated resulting in a Pulmonary Vein Isolation Surgical Ablation? How much more severe should we let it get? Judge Hale, please tell me you can see the contradictions in the Prosecutors response.

On page 9, the Prosecutor states I refused the vaccine. I thoroughly explained in my motion my beliefs, my inability to obtain information from staff as everyone was herded through to either sign to get or decline it. It stated an information sheet was provided, it was not. Beyond my religious beliefs I asked to know more about how they are made and statistics on heart patients having the vaccine and blood clotting. I do not believe in the use of human cells to make vaccines, test vaccines or otherwise. But I could not get questions answered as there was no data to support them they informed me. This is true even in the public so you can only imagine low limited that information is in the prison system. See Attachment 4, article from Dailywire+ on former head coach Nick Rolovich of the Washington State Football program. His $25 million dollar wrongful termination claim/suit from being fired from his job for not getting vaccinated clearly shows the same scenario where he tried to received information about the vaccine and was unable to get his questions answered while also being Catholic (as myself) also not believing in taking the vaccine for religious purposes. He shares the exact scenario I have gone through while incarcerated in regards to wanting to know more about what was being

inserted into his body and with all of his resources was unable to obtain that information. These are not isolated incidents. On page 10, the Prosecutors says I chose not to avail myself with any educational or discussions on the vaccine. That is a false statement. You cannot get that information from here. What they have now, I don't know but considering the provider onsite during part of the week (Dr. Merchant) he would not get a booster unless people around him or dying. The Prosecutors said I discarded the rationale of the vaccine. They have no way of knowing that, it is simply untrue.

On page 11, it appears the Prosecutor is telling the Court how to do their job by saying that sentence reductions based on medical conditions should go back to the pre-COVID policy. Neither I or this Court can ignore there are still people dying of COVID. The Prosecutor hasn't made any mention of deaths of vaccinated individuals such as Colin Powell. While I don't have access to full data even for the State of Kentucky. Many Kentuckians have lost their lives after being vaccinated. Prosecutors should not have influence on the Courts with another cloud of smoke of ignoring that COVID dangers still exits and is at a higher risk for those with medical conditions in the crowded prison environment than the general population.

I hope I have been able to paint an even clearer picture of the issues I and others face in regards to having our medical needs met. I hope you see see the contradictions in my medical records and with the Prosecutors rebuttal. I respectively ask you to please review my full motion and its Exhibits in an effort to understand the politics versus the policy versus the actual events that take place.

Sincerely,

*Josephine Crowe*
Josephine Crowe
20017-033

Josephine Crowe 30017-033
FMC Lexington
Federal Medical Center
attn: Satellite Camp
P.O. Box 14525
Lexington Ky 40512



**CERTIFIED MAIL**
7018 1830 0001 9486 3717

RECEIVED
JAMES J. VILT, JR. - CLERK
SEP 29 2022
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

United States District Court
106 Gene Snyder U.S Courthouse
attn Judge Hale
601. W. Broadway
Louisville Ky 40202-2249

**FILED**
JAMES J. VILT JR,
CLERK
September 29, 2022
U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY